**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 08 2014, 6:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN M. TRUITT**
Bertig & Associates LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BILLIE JO MOORE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  64A04-1309-CR-497 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
Cause No. 64D01-1210-FB-10328

**July 8, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Billie Jo Moore appeals her conviction for Aggravated Battery,[1] a class B felony. Moore also appeals the determination that she is a Habitual Offender.[2] More particularly, she argues that the trial court erred when it admitted into evidence blood tests indicating that Moore's blood contained cocaine at the time of the crime. Moore also argues that her aggregate sentence is inappropriate in light of the nature of the offense and her character. We find that the trial court did not err in admitting the blood test into evidence and determine that Moore's sentence is not inappropriate. Therefore, we affirm the judgment of the trial court.

## FACTS

On the afternoon of October 10, 2012, Moore drove her vehicle into a ditch between two houses. Neighbors saw Moore's car in the ditch and came outside to help her. A neighbor dialed 911, at which point Moore stated that she had a friend who lived a few blocks away and walked in that direction.

At this time Robert Gottschling, a sixty-four-year-old retiree, was walking in from picking up his mail. Moore approached Gottschling, told him that she had been in an accident, and asked if she could use his telephone. Gottschling agreed and let her into his home. He then placed his mail on the footrest of his recliner and let Moore into the kitchen, where he handed her his telephone receiver. He then went back into the living room and began looking through his mail.

---

[1] Ind. Code § 35-42-2-1.5.

[2] Ind. Code § 35-50-2-8(a).

Gottschling heard Moore make two phone calls. Moore then stepped into the doorway and asked Gottschling if she could fill up her cup with water. After she had filled her cup from the kitchen sink, she thanked him. Gottschling then told Moore, "you can leave now" or something "to that effect." Tr. p. 387. Gottschling stated that his tone towards Moore might have been irritated because she stayed in his home after making use of the telephone.

Moore then lunged at Gottschling with a dagger, which he kept in the kitchen to open envelopes. Gottschling struggled with her, trying to take the dagger away. They fell to the floor during the struggle; Gottschling gouged at Moore's eyes and hit her on the head. At Moore's trial he testified that he was "fighting for [his] life." Tr. p. 391. Gottschling noticed that he was bleeding and had been hurt. His blood made the dagger slippery, and he was able to take it from Moore. Gottschling then ran from his home. Once outside, he felt himself getting weak and leaned on a fence. When he began screaming for help, neighbors responded and found the dagger lying near him on the ground.

Deputy Jason Praschak had been called to the area because of the report that Moore's vehicle was in a ditch. Neighbors waived him down, and he found Gottschling gasping for air. Gottschling told Deputy Praschak that a woman had asked to use his phone and attacked him. He informed Deputy Praschak that she might still be in his home.

Police searched Gottschling's house but found no one. However, Deputy Brian Dziedzinski noticed Moore smoking a cigarette and holding her purse. Moore complained of pain and was taken to the hospital for medical clearance. Hospital personnel discovered the presence of cocaine metabolites in her blood.

Gottschling suffered multiple stab wounds. He was stabbed twice in the chest; one stab wound pierced the sack around his heart, and the sack filled with blood. He also suffered wounds to his left hand, forearm, and face. Gottschling spent five days in the hospital. Three were spent in the intensive care unit.

On October 11, 2012, the State charged Moore with class B felony aggravated battery and class C felony burglary with a deadly weapon. The State also charged Moore with two counts of operating a vehicle while intoxicated. On July 19, 2013, Moore moved to sever the intoxication charges from the battery charges, and the trial court granted her motion that same day.

On July 24, 2013, Moore filed a motion in limine concerning prior bad acts and a motion to suppress blood and urine tests. The trial court denied both motions

Moore's four-day jury trial commenced on July 29, 2013, and the jury found Moore guilty on both counts. Moore was also found to be a habitual offender. Sentencing was held on August 30, 2013. The trial court found that the conviction for class C felony battery with a deadly weapon merged into the conviction for the class B felony aggravated battery; it sentenced Moore to twenty years for the class B felony and enhanced the sentence by 30 years because of Moore's status as a habitual offender.

4

Moore now appeals.

## DISCUSSION AND DECISION

### I. Admission of Blood Evidence

Moore argues that her conviction must be reversed because the trial court should have excluded blood test results indicating the presence of cocaine in her blood at the time she attacked Gottschling. Moore contends that this evidence was admitted in violation of Indiana Rule of Evidence 404(b), which excludes evidence of prior bad acts.

When reviewing a trial court's decision to admit evidence, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. Collins v. State, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005). We also consider uncontroverted evidence in the defendant's favor. Id.

A trial court has broad discretion in ruling on the admissibility of evidence. Washington v. State, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. Id. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id.

In addressing Moore's arguments, we initially observe that Moore did not make a contemporaneous objection to the admission of the blood evidence at trial. Therefore, she has waived review of the admission of the evidence. Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000).

5

Waiver notwithstanding, we address the merits of Moore's claim. Moore is correct that Indiana Rule of Evidence 404(b) generally bars admission of evidence of uncharged bad conduct. Indiana Rule of Evidence 404(b) provides that:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
> > (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> > (B) do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

While section 404(b)(1) of the rule clearly prohibits the use of evidence of uncharged bad acts as character evidence "in order to show that on a particular occasion the person acted in accordance with the character," section 404(b)(2) lists permitted uses of such evidence. This court has previously held that this list is illustrative but not exhaustive. Embry v. State, 923 N.E.2d 1, 8 (Ind. Ct. App. 2010).

Moore is correct that Indiana Evidence Rule 404(b) bars extrinsic evidence of uncharged criminal acts. However, it does not bar evidence of uncharged acts that are intrinsic to the offense charged. Wages v. State, 863 N.E.2d 408, 411 (Ind. Ct. App. 2007). "Other acts are 'intrinsic' if they occur at the same time and under the same circumstances as the crimes charged." Id. Additionally, this Court has held that "evidence of happenings near in time and place that complete the story of the crime is

6

admissible even if it tends to establish the commission of other crimes not included among those being prosecuted." Id.

Here, the blood evidence indicating cocaine metabolites in Moore's blood was evidence of an uncharged act that was intrinsic to the offense charged and completed the story of the crime. At trial, Moore's counsel suggested that there was no reason for Moore to attack Gottschling: "I ask you to consider who really had the motivation to be the initial aggressor." Tr. p. 47. The testimony presented by the State's expert concerning the blood evidence explained that a person under the influence of cocaine can be "agitated" and that cocaine "causes your body to go crazy." Tr. p. 360. This could explain why Moore would attack Gottschling when she was otherwise unprovoked. Under these circumstances, we cannot say that the trial court erred in admitting the blood evidence.

## II. Sentencing Challenge

Moore also challenges the appropriateness of her fifty-year aggregate sentence. She argues that the sentence is inappropriate in light of the nature of the offense and her character.

On appeal, this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Under Appellate Rule 7(B), the question is not whether it is more appropriate to impose a different sentence upon the defendant, but whether the

defendant's sentence is appropriate. Steinberg v. State, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011). The defendant bears the burden of persuasion on appeal that the sentence he received is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Here, the nature of the offense was egregious. Gottschling, a sixty-four year old retiree, allowed Moore into his home. He allowed her to use his telephone to call for help and let her have a drink of water. Moore repaid him with an unprovoked attack. She stabbed him several times and placed him in the hospital. There was nothing to be gained by the attack; it was senseless and violent. Thus, the nature of the offense avails Moore of nothing.

Turning to Moore's character, we note that she has a lengthy criminal history. Moore has been arrested and charged on at least twenty occasions; she has six prior felony convictions and at least ten prior misdemeanor convictions. Appellant's App. p. 222. At Moore's sentencing hearing, the trial court noted that "[t]hat's as extensive a criminal history as I've seen in my [thirty four] years on the bench." Sentencing Tr. p. 16. Moreover, Moore has been sentenced to community service, substance abuse treatment, formal and unsupervised probation, and prison. She has violated probation more than once. Appellant's App. p. 222. It is clear that she has not learned from these experiences. Rather, she has continued to commit crimes. We agree with the trial court that "the criminal justice system has tried everything and it hasn't worked." Sentencing Tr. p. 17.

Under these circumstances we cannot say that Moore's sentence is inappropriate in light of the nature of the offense and character.  The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.